UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

|  |  |
|---|---|
| TRANSFIRST HOLDINGS, INC., et al., ) <br> ) <br> Plaintiff(s), ) <br> ) <br> vs. ) <br> ) <br> DOMINIC J. MAGLIARDITI, ) <br> ) <br> Defendant(s). ) <br> ) | Case No. 2:16-cv-00322-APG-NJK <br><br> **ORDER** <br><br> (Docket No. 12) |

Pending before the Court is Plaintiffs' motion to enforce subpoenas and motion for award of attorneys' fees and costs. Docket No. 12. Movant Francine Magliarditi filed a response, and Plaintiffs filed a reply. Docket Nos. 23, 25. The Court finds the motion properly resolved without oral argument. *See* LR 78-1. For the reasons discussed below, Plaintiffs' motion is **GRANTED** in part and **DENIED** in part.

**I.   BACKGROUND**

Following a three week bench trial involving federal and state law claims, the United States District Court for the Northern District of Texas entered a final judgment against Defendant Dominic Magliarditi in the amount of approximately $4.4 million. Docket No. 12 at 6; *see also* Docket No. 22-15 at at 13-15. The Fifth Circuit affirmed on appeal. *See Transfirst Holdings, Inc. v. Magliarditi*, 574 Fed. Appx. 345 (5th Cir. 2014). Plaintiffs are now engaging in post-judgment discovery because Mr. Magliarditi has failed to satisfy that judgment. *See, e.g.*, Docket No. 12 at 7.

Francine Magliarditi is the longtime spouse of Defendant Dominic Magliarditi. Docket No. 23 at 2. Plaintiffs argue that the Magliarditis are funneling money through shell companies, including ATM Enterprises LLC and DII Capital Inc. (the "Companies"), to avoid satisfying Plaintiffs' judgment. Docket No. 12 at 7. During Plaintiffs' deposition of Mr. Magliarditi, he testified that Ms. Magliarditi is the president, officer, and director of DII Capital Inc. Docket No. 22-9 at 17-18. He further testified that no one other than Ms. Magliarditi is associated with DII Capital Inc. *Id*. at 26. In turn, Mr. Magliarditi testified that DII Capital Inc. is the sole manager and officer of ATM Enterprises LLC. *Id*. at 56. Mr. Magliarditi also testified that these entities have paid his personal expenses, his rent, and the lease for his car. *Id*. at 32-33. Plaintiffs submit that large transfers of money have occurred between certain undisclosed accounts and the Magliarditis' personal joint bank account. Docket No. 12 at 10 n.14.

On December 9, 2015, pursuant to Federal Rule of Civil Procedure 45, Plaintiffs' counsel issued subpoenas on behalf of the United States District Court for the Northern District of Texas.[1] *See, e.g.*, Docket No. 22-1 at 4-19. On December 15, 2015, Plaintiffs served subpoenas on Ms. Magliarditi and the Companies by causing them to be served personally on Mr. Magliarditi at a Nevada residence. Docket No. 22-1 at 2; *see also* Docket No. 12 at 14. On December 19, 2015, Plaintiffs additionally mailed the subpoenas to the Magliarditis via certified mail. Docket No. 22-1 at 2. Ms. Magliarditi agreed to appear at the deposition and produced some responsive documents. Docket No. 12 at 15. The parties scheduled a deposition to occur at her attorneys' office. *Id*.; *see also* Docket No. 23-1 at 29 (Ms. Magliarditi's counsel agreeing to schedule depositions for February 18 and 19, 2016).

On February 12, 2016, six days prior to Ms. Magliarditi's scheduled deposition date, Mr. Magliarditi invoked "Nevada's spousal testimonial privilege." Docket No. 23 at 2. On February 17, 2016, one day prior to Ms. Magliarditi's deposition, she filed an emergency motion for protective order and an emergency motion to quash subpoena on that basis. Docket Nos. 1, 2. In neither motion did she disclose the deposition was set for the next day. *See* Docket No. 6 at 3 n.2. At 9:00 a.m., on February 18, 2016, Plaintiffs' counsel, Mr. Magliarditi, a court reporter, and Ms. Magliarditi's attorney, Candace

---

[1] Unless otherwise specified, references to "Rules" refer to the Federal Rules of Civil Procedure.

1  Carlyon, gathered in Ms. Carlyon's office.  *See* Docket No. 22-12 at 26-31.  Mr. Magliarditi claimed
2  the "spousal testimonial privilege" and Ms. Magliarditi refused to testify on that basis.  *Id.*  At 3:31 p.m.,
3  on February 18, 2016, the Court denied both of Ms. Magliarditi's emergency motions without prejudice
4  because, *inter alia*, Ms. Magliarditi created the emergency situation by waiting until the eleventh hour
5  to bring her motions.  Docket No. 6 at 4.

   On March 16, 2016, Plaintiffs filed the motion presently before the Court, seeking to enforce
   the December 15, 2015, subpoenas and recover attorneys' fees and costs.  Docket No. 12.  The place
   of compliance is within this district and, therefore, the Court has the power to enforce the subpoenas.
   Fed.R.Civ.P. 45(d)(3).

## II.  DEPOSITIONS

### A. Post-Judgment Discovery

Federal Rule of Civil Procedure 69(a)(2) authorizes a judgment creditor to obtain discovery as follows:

> In aid of the judgment or execution, the judgment creditor or a successor in interest whose interest appears of record may obtain discovery from any person – including the judgment debtor – as provided in these rules or by the procedure of the state where the court is located.

Fed.R.Civ. 69(a)(2).  "The scope of postjudgment discovery is very broad[.]"  *Henry v. Rizzolo*, 2012 WL 13725, *3 (D. Nev. Jan. 4, 2012) (internal quotation and citations omitted).  Discovery is permissible if it is within the scope of the Federal Rules of Civil Procedure or, in the District of Nevada, the Nevada Rules of Civil Procedure.  *See NML Capital, Ltd. v. Republic of Argentina*, 2015 WL 1186548, *5-6 (D. Nev. Mar. 16, 2015).

Judgment creditors may "obtain information from parties and non-parties alike, including information about assets upon which execution can issue or about assets that have been fraudulently transferred."  *Henry*, 2012 WL 13725 at *3 (citations omitted).  To obtain discovery from a non-party under federal law, a judgment creditor must show that "the relationship between the judgment debtor and the nonparty is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets."  *NML Capital, Ltd.*, 2015 WL 1186548, *5-6 (citing 12 C. Wright & A. Miller, Federal Practice & Procedure § 3014, p. 162 (2d ed.) (internal quotations omitted).  "'Where spouses are involved, even

3

a slight showing that there has been a transfer of property from the debtor spouse to the other spouse' may be sufficient for the court to allow a judgment creditor to delve into the personal assets" of a non-party spouse. *VFS Fin., Inc. v. Specialty Fin. Corp.*, 2013 WL 1413024, *4 (D. Nev. Apr. 4, 2013) (citations omitted).

### B. Choice of Law

Federal Rule of Evidence 501 provides that "in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed.R.Evid. 501. "Where there are federal question claims and pendent state law claims present, the federal law of privilege applies." *Agster v. Maricopa Cty.*, 422 F.3d 836, 839-40 (9th Cir. 2005). Similarly, where a judgment is based on federal law and pendant state law claims, federal privilege law applies in post-judgment discovery. *Internet Direct Response, Inc.*, 2010 WL 1752181, *5 (applying federal privilege law in post-judgment discovery to resolve non-party spouse's privilege claim); *Entrepreneur Media, Inc. v. Smith*, 2013 WL 6185246, *3 (E.D. Cal. Nov. 26, 2013) (applying federal privilege law in post-judgment discovery to resolve privilege claim). Accordingly, in federal question cases, "Rule 69 does not permit a third party or judgment debtor to resist post-judgment discovery by invoking the state court's rules of evidence." *F.D.I.C. v. Lewis*, 2015 WL 4579323, *15-16 (D. Nev. July 29, 2015) (applying federal law to overrule non-party accountant's privilege claim).

### C. Marital Privileges

Federal common law recognizes two marital privileges. "The first, usually called the 'adverse spousal testimony' privilege, allows a spouse to refuse to testify adversely to his or her spouse." *United States v. Griffin*, 440 F.3d 1138, 1143 (9th Cir. 2006) (citing *Trammel v. United States*, 445 U.S. 40, 53 (1980)). It applies only in criminal actions. *Trammel*, 445 U.S. at 52 (stating the privilege "permits an accused to exclude all adverse spousal testimony"). "The second, usually called the 'marital communications' privilege, protects from disclosure private communications between spouses." *Griffin*, 440 F.3d at 1143-44. "The privilege (1) extends to words and acts intended to be a communication; (2) requires a valid marriage; and (3) applies only to confidential communications, i.e., those not made in the presence of, or likely to be overheard by, third parties." *United States v. Montgomery*, 384 F.3d 1050, 1056 (9th Cir. 2004) (citing *United States v. Marashi*, 913 F.2d 724, 729–30 (9th Cir. 1990)).

"[E]ither spouse may assert the privilege to prevent testimony regarding communications between spouses." *Id*. at 1058-59. However, "[t]he claim of privilege must be made and sustained on a question-by-question or document-by-document basis." *United States v. Christensen*, 801 F.3d 970, 1007 (9th Cir. 2015). Failure to object to waives the martial communication privilege. *United States v. Vo*, 413 F.3d 1010, 1017 (9th Cir. 2005).

Here, Plaintiffs have made an adequate showing to warrant the deposition of Ms. Magliarditi by demonstrating that the Companies controlled by Ms. Magliarditi have paid for Mr. Magliarditi's living expenses and by establishing that large transfers have been routed through their joint checking accounts. The uncertainty surrounding the Magliarditis' community estate only further confirms that discovery of non-privileged, relevant facts is required to enable a legal determination regarding those assets. Contrary to Ms. Magliarditi's argument, federal privilege law governs here because the underlying judgment is based on federal and state law claims. She may not invoke state privilege law. *F.D.I.C.*, 2015 WL 4579323 at *16. Consequently, adverse spousal privilege is inapplicable and she may only invoke the marital communications privilege on a question-by-question basis where the factors in *Montgomery* are present.[2]

Finally, Ms. Magliarditi appears to argue that the subpoenas served on the Companies must be quashed due to inadequate service. Docket No. 23 at 10 (mentioning "purported" service). She complains that the subpoenas were not "served on the corporate entities themselves or to a custodian of records or person most knowledgeable." Docket No. 23 at 10. The subpoenas, for example, were addressed to: "ATM Enterprises LLC, by and through its registered agent or through Francine Magliarditi or other appropriate agent or representative of ATM Enterprises, LLC[.]" Docket No. 22-1 at 4. Plaintiffs then caused these subpoenas to be personally served on Mr. Magliarditi in addition to mailing them via certified mail. *Id.* at 2.

Ms. Magliarditi fails meaningfully develop this argument. She complains that the subpoenas were not "served on the corporate entities themselves" but fails to otherwise explain why this significant

---

[2] The Court finds that Ms. Magliarditi's argument about the transmutation agreements fails, and adopts the analysis of the Northen District of Texas. *See* Docket No. 25-2.

given the circumstances. Docket No. 23 at 10. Moreover, she provides no authority establishing how this service method was inadequate. *See id*. Instead, she simply quotes, without explanation, inapposite sections of Rule 30(b)(6), which describe the process for a responding entity to select its corporate designee. *See id*. Accordingly, this argument is unpersuasive, particularly given that Ms. Magliarditi has previously agreed to testify and only refused to do so on the basis of an erroneous objection during her scheduled deposition. *See* Docket No. 22-12 at 29:19-23.

Accordingly, as to the requested depositions, the Court **GRANTS** Plaintiffs' motion to enforce subpoenas. **IT IS FURTHER ORDERED** that Ms. Magliarditi will testify at a mutually-agreed upon time and location within 30 days of the issuance of this order.

### III.   REQUESTS FOR PRODUCTION

Plaintiffs ask the Court to issue an order compelling Ms. Magliarditi to produce two categories of documents: monthly statements for various financial accounts and documents showing the value of assets held in trust by Ms. Magliarditi. Docket No. 12 at 21-24. Plaintiffs contend that Ms. Magliarditi's boilerplate objections make it "impossible to discern whether, or to what extent, she is even agreeing to produce documents." *Id*. at 21. Ms. Magliarditi responds that she has produced all the responsive documents and that this dispute is amenable to resolution without judicial intervention. Docket No. 23 at 11; *see also* Docket No. 23-1 at 19-20 (declaration providing that all responsive documents, over 1500 pages, were produced). Plaintiffs fail to reply to Ms. Magliarditi's argument. *See* Docket No. 25. In light of Ms. Magliarditi's uncontroverted representation that all responsive documents have been provided, Plaintiffs' request is **DENIED**. *See Edberg v. Desert Palace Inc*., 2010 WL 5136014, *2 (D. Nev. Dec. 9, 2010) (denying motion to compel based on representation that all responsive documents have been provided).

### IV.   SANCTION REQUEST

Plaintiffs submit that they are is entitled to sanctions in the amount of their costs and attorneys' fees. Their request is unsupported by authority. Docket No. 12 at 24. Ms. Magliarditi responds that Plaintiffs' request for sanctions is governed by Rule 45(g), which Ms. Magliarditi contends is the "only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a nonparty for

failure to comply with a subpoena[.]"[3]  Docket No. 23 at 12 (quoting *Pennwalt Corp. v. Durand-Wayland, Inc.*, 708 F.2d 492, 494 (9th Cir. 1983)). Plaintiffs do not rebut this assertion in reply. Docket No. 25 at 12. Therefore, the Court considers only whether sanctions are appropriate under Rule 45(g).

Rule 45(g) permits the court where compliance is required to hold "in contempt a person who, after having been served, fails without adequate excuse to obey the subpoena or an order related to it." Fed.R.Civ. 45(g). "Although the subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nevertheless an act of defiance of a court order and exposes the defiant witness to contempt sanctions." Advisory Committee Notes to Rule 45(a) 1991 Amendment. "Once the person subpoenaed objects to the subpoena, however, . . . the party seeking discovery must obtain a court order directing compliance." *Pennwalt Corp.*, 708 F.2d at 494 n.5.

In this case, Ms. Magliarditi produced responsive documents, but refused to testify based on a misguided view as to the governing law. At the time of the deposition, a motion to quash and a motion for protective order were pending. *See, e.g.*, Docket Nos. 1, 2. Had Nevada law applied, her testimony may have waived her state law privilege claim if she proceeded with the deposition. *See, e.g.*, *Franco v. State*, 866 P.2d 247, 256 (1993). Ms. Magliarditi's failure to testify at that time therefore does not rise to the level of contempt. Accordingly, the Court **DENIES** Plaintiffs' request for attorneys' fees and costs.

## V.  CONCLUSION

For the reasons stated above, Plaintiffs' motion to enforce is **GRANTED** in part and **DENIED** in part. Plaintiffs' request for sanctions is **DENIED**.

IT IS SO ORDERED.

DATED: May 31, 2016

_____
NANCY J. KOPPE
United States Magistrate Judge

---

[3] Ms. Magliarditi erroneously cites Rule 45(f), which has now been restyled as Rule 45(g).